| | | |
|---|---|---|
| TYE EDWARD EVANS<br>5210 Linden Avenue<br>Baltimore, Maryland 21201  MAR -4  PM 3:50<br>CIVIL DIVISION<br>Plaintiff | : | IN THE |
| | : | CIRCUIT COURT |
| vs. | : | FOR |
| GUADENZIA, INC<br>Serve: Michael Moyle, R/A<br>4615-4617 Park Heights Avenue<br>Baltimore, Maryland 21215 | : | BALTIMORE CITY<br>24-C-11-001397 |
| | : | CASE NO. 24H00005733 |
| Defendant | | |

## COMPLAINT AND JURY TRIAL PRAYER

NOW COMES, Tye Edward Evans, "Plaintiff", by his attorneys JESSIE LYONS CRAWFORD, ESQ., and THE LAW OFFICE OF JESSIE LYONS CRAWFORD, LLC, and sues the Defendant Guadenzia, Inc., for money damages in and support of his cause state as follows:

### COUNT I- NEGLIGENCE

1. Plaintiff, Tye Edward Evans, is a resident of Baltimore City, Maryland.

2. Defendant, Guadenzia, Inc., is a Maryland Foreign Corporation in good standing, that conducts business throughout the State of Maryland.

3. On September 26, 2009, Plaintiff overslept while in the care of the Defendant. Subsequently, Plaintiff awoke and went to obtain his medication.

4. Plaintiff was denied the medication because the nurses log book indicated that Plaintiff's medicine had already been administered to him. Plaintiff categorically denied that he had in fact already had his medication.

5. Subsequently, the next day on September 27, 2009, Plaintiff overslept again.

6. Like the previous day, the nurse logged in the logbook that Plaintiff had already had his medication for his blood pressure. A second nurse refused to administer Plaintiff's medications for the same erroneous reasons as the day before. Although, Plaintiff categorically denied that he had been administrated medication and also informing the nurse that he had not had his blood pressure medication the day before, the nurse refused to provide Plaintiff with his much needed medication.

7. On September 27, 2009, Plaintiff went to a male nurse identified as "Ricky" who worked the 3 to 11 Shift. Plaintiff complained to the nurse that he had a terrible headache. The male nurse took Plaintiff's blood pressure manually and indicated that Plaintiff's blood pressure was 160/110.

8. Ricky stated that Plaintiff " Was Fu%! Up". Subsequently, Ricky administered three (3) Clondoine pills to Plaintiff and instructed Plaintiff to rest.

9. On September 28, 2009, in the early morning Plaintiff requested that a female nurse check his blood pressure and was told by a female nurse that she was busy and didn't have time to check it. The female nurse gave him his medicine and a sent Plaintiff on his way.

10. Later than evening, Plaintiff began to feel strange and asked another nurse to check his blood pressure. The female nurse checked it and stated that "everybody was sick at one time" and instructed the Plaintiff to go and lay down.

11. The nurse indicated that the Plaintiff's pressure was fine.

12. On September 29, 2009, at approximately 5:30 a.m., Plaintiff was administered his medication. Later that day, Plaintiff was out with David Parker from Noon until 3:00 p.m. when he returned back to the Defendant's location.

13. When Plaintiff arrived soon thereafter, and advised Ricky the male nurse that his right side was feeling peculiar and that he was not able to keep his balance. Ricky replied " Good things it's your right side and not your left", and Ricky proceeded to walk down the hall without offering Plaintiff any assistance.

14. On or around September 30, 2009, at approximately 5:30 a.m., Plaintiff while in the care of the Defendant went to take his medication. He informed a nurse that he felt his coordination was off.

15. Subsequently, the nurse administered Plaintiff's medicine. The nurse noticed that the Plaintiff was unable to pick up his cup and requested that the Plaintiff walk down the hallway so that she could observe how Plaintiff walked.

16. After performing this exercise at the nurses direction, he was instructed to rest and she would place his name on the list to see a doctor.

17 At 10:00 a.m. the same morning, Plaintiff was seen by the Doctor Luminadie.

18. After meeting with Doctor Luminadie, Plaintiff was transported to Sinai Hospital in Baltimore, Maryland.

19. After being seen by Sinai Hospital doctors, Plaintiff was admitted after suffering a stroke. Plaintiff was in the hospital from September 30, 2009 until he was discharged on October 6, 2009.

20. After being discharged, Plaintiff was unable to return to the Defendant's facilitates because they were unable to accommodate his situation.

21. As a direct and proximate result of the negligence described above by the Defendant and it's employees, Plaintiff has suffered physical injuries and mental anguish. Plaintiff has incurred expenses for medical care and treatment, medicines, nursing

services, physical therapy, and other types of medical related attention. Plaintiff continues to suffer physical pain and discomfort from the refusal of the Defendant to provide medical care. All the above damages were directly and proximately caused by the aforementioned negligence of the Defendant and were incurred without contributory negligence or assumption of the risk on the part of the Plaintiff.

22. It was the duty of the Defendant to use due care while Plaintiff was being treated at its facilities.

23. The Defendant breached its duty when its agents/employees misrepresented that Plaintiff had been administered medicine, when it's agent/employees refused to take Plaintiff's blood pressure and when it's agents/employees refused to administer proper medical care.

24. As a direct and proximate result Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands judgment against Defendant in the amount of TWO MILLION DOLLARS ($2,000,000.00), plus interest, costs, attorneys fees and any other relief this court deems appropriate.

Respectfully Submitted,

JESSIE LYONS CRAWFORD, Esq.
LAW OFFICE OF JESSIE LYONS CRAWFORD, LLC
2601 Maryland Avenue
Baltimore, Maryland 21218
Office (410) 662-1230